**In re the CONSERVATORSHIP OF Dorothy F. BRADY, Conservatee.**

**Nos. C9–98–1960, C1–98–1984.**

Supreme Court of Minnesota.

March 30, 2000.

Randy Boggio Garvey & Mathison, Bloomington, Allan R. Poncin, Minneapolis, for Tim Brady.

Steinhagen & Crist, P.L.L.P., James M. Crist, Chad M. Roggeman, Edina, for Roszak.

Stephen D. Radke, Minneapolis, for Dorothy Brady.

Meagher & Geer, P.L.L.P., Laura J. Hanson, Jenneane L. Jansen, Mineapolis, for respondent.

## OPINION

PAGE, Justice.

This family tragedy involves Dorothy Brady (Brady), her conservator, Anthony Roszak (Roszak), and her six children: Kathleen Brady, Coleen Brady, Maureen Brady Jordan, Timothy Brady, Daniel Brady, and Mark Brady. The parties to this appeal are Brady, Roszak, and Timothy Brady, aligned together on one side and Coleen Brady on the other. The question presented is whether the district court properly determined that Minnesota is and should remain Brady's place of abode. However, in its most basic form, the question is where and with whom will Brady live out the remaining years of her life.

On November 3, 1997, the Hennepin County District Court determined that Brady was incapacitated and appointed Roszak as Brady's general conservator with the power to determine "the appropriate placement for [Brady], be it Minnesota or Pennsylvania." On January 22, 1998, Roszak recommended that Brady's place of abode be Minnesota. After allowing Brady to visit her daughter, Maureen, in Pittsburgh, Pennsylvania in February 1998, Roszak changed his mind and recommended that Pennsylvania be Brady's place of abode. By order dated June 18, 1998, the district court determined that it is in Brady's best interests for her place of abode to remain Minnesota and ordered her returned within 30 days.

Roszak and Brady appealed that decision, as did Brady's son, Timothy. Brady's daughter, Coleen, responded to the appeals, which were consolidated.[1] The court of appeals affirmed, recognizing the district court's finding that Brady did not reliably express a desire to live in Pennsylvania and holding that the district court properly determined that living in Minnesota is in Brady's best interests. *See In Re Conservatorship of Brady*, Nos. C9–98–1960, C1–98–1984, 1999 WL 326189, at *1, *2 (Minn.App. May 25, 1999). Because we conclude that the district court did not abuse its discretion in determining that it is in Dorothy Brady's best interests to retain Minnesota as her place of abode, we affirm.

Brady, a 73–year–old widow, first moved to Minneapolis in 1966 with her husband and children. After her husband died in

---

1. Minnesota Statutes § 525.714 (1998) automatically stayed the operation of the June 18, 1998 order during appeal and Respondent, Coleen Brady, moved to suspend that automatic stay and have her mother immediately returned to Minnesota. The court of appeals granted the motion and required that Brady be returned to Minnesota. A few weeks later, the district court determined that Brady's health prevented her from traveling and suspended the June 18, 1998 order, thereby allowing Brady to stay in Pennsylvania pending appeal. Thus, at this time Brady continues to live in Pittsburgh with her daughter, Maureen.

1967, Brady supported the six children by working as a psychiatric nurse at the Veteran's Administration Hospital. The family lived at 5032 Bloomington Avenue South in Minneapolis. Brady has suffered from Alzheimer's disease and related dementia since sometime in the early 1990's. Brady remained in her home, living with Maureen until Maureen married and moved to Pennsylvania, and then living with Timothy in the Minneapolis home until October 1996. At that time, Brady moved in with Daniel and his family in Apple Valley, Minnesota because Timothy moved to Georgia. She remained with Daniel and his family until March 1997, when Daniel was temporarily transferred to North Carolina. Shortly thereafter, Brady moved from Minnesota to Maureen's home in Pittsburgh, but was returned to Minnesota pursuant to an August 26, 1997 court order. Upon her return to Minnesota, Brady moved into The Kenwood, an assisted-living facility in Minneapolis.

In the November 3, 1997 order, the district court not only determined that Brady was incapacitated and appointed Roszak as her general conservator, but also found that although Brady had stated a preference to live with her daughter, Maureen, in Pennsylvania, she did not express "an intent to change her domicile [2] to Pennsylvania" during her competency. At the time of Roszak's appointment, Brady was still living at The Kenwood in Minnesota, although due to unrelated health problems in January 1998, she would be moved for a short period of time to the Mt. Olivet Careview nursing home in Richfield, Minnesota.

On January 22, 1998, Roszak filed a petition requesting that the court deter-mine that it was in Brady's best interests that her place of abode be Minnesota. After that petition, Roszak allowed Brady to travel to Pennsylvania to visit her daughter, Maureen. Roszak traveled to Pennsylvania himself to personally examine first hand Brady's living conditions there and concluded they were "fine." After returning to Minnesota, Roszak changed his mind about Brady's place of abode and submitted an affidavit to the district court asking the court to declare Pennsylvania Brady's place of abode.

The district court held a hearing on Roszak's petition, and by order dated June 18, 1998, determined that it was in Brady's best interests for her place of abode to be Minnesota and ordered her returned to this state. Roszak and Brady appealed this decision, and their appeal was consolidated with that of Timothy Brady who also appealed.[3] In a split decision, the court of appeals affirmed the district court's decision. *See In Re Brady,* 1999 WL 326189, at *2.

Appellants contend that the district court erred as a matter of law when it determined that it is in Brady's best interests to have Minnesota as her place of abode. First, they argue that the district court did not place Brady in the living situation that would least limit her civil rights and restrict her personal freedom, as required by Minn.Stat. § 525.56, subd. 3(6) (1998).[4] This argument is based on their contention that living in Maureen Brady's home in Pennsylvania places fewer restrictions on Brady's civil rights and personal freedom than having her live in an assisted-living facility in Minnesota. Appellants' second argument is that the dis-

---

**2.** While the issue before us has to do with determining Brady's place of abode, we note that throughout these proceedings in discussing this issue, the parties and the district court have used the terms place of abode, domicile, and residence interchangeably, as well as making reference to where Brady should live. Thus, we read the term domicile in the district court's November 3, 1997 order as "place of abode."

**3.** For ease of discussion, we will refer to Roszak, Brady, and Timothy Brady collectively as appellants.

**4.** Minnesota Statutes § 525.56, subd. 3(6) provides that the conservator has "[t]he duty and power to exercise supervisory authority over the * * * conservatee in a manner which limits civil rights and restricts personal freedom only to the extent necessary to provide needed care and services."

trict court abused its discretion by not seriously considering Brady's expressed preference for living with her daughter, Maureen, in Pennsylvania.

In response, Coleen Brady argues that the district court did not abuse its discretion when it determined that keeping Minnesota as Brady's place of abode is in Brady's best interests and that Minn.Stat. § 525.56, subd. 3(6) does not prevent the district court from placing Brady in an assisted-living facility if it is in her best interests. Coleen Brady also contends that the court of appeals correctly decided that courts may consider the reliability of the conservatee's expressed preference as to where her place of abode should be.

The district court has the authority under Minn.Stat. § 525.56, subd. 3(1) (1998) to appoint a conservator with the power to establish the conservatee's place of abode within or without the state. However, the conservator's power is limited. Under the conservatorship statute and our case law, the courts and by implication the conservator are required to make choices and decisions for the conservatee that are in the conservatee's best interests. *See generally* Minn.Stat. § 525.544, subd. 2 (1998); *In Re Conservatorship of Torres*, 357 N.W.2d 332, 337–338 (Minn.1984) (recognizing that probate court must act in the conservatee's best interests in a proceeding); *State v. Lawrence*, 86 Minn. 310, 312, 90 N.W. 769, 770 (1902) (recognizing that guardian may move a ward if acting in good faith; welfare of ward is chief matter to be considered). Further, when making those choices and decisions, conservators are required to choose the alternative that least restricts the conservatee's civil rights and personal freedom. *See* Minn.Stat. § 525.56, subd. 3(6). Finally, in making recommendations, the conservator is "subject to the control and direction of the court at all times and in all things." Minn. Stat. § 525.56, subd. 1 (1998). Thus, it is the district court that is ultimately responsible for ensuring that the conservator's actions are in the conservatee's best interests.

■ Because the district court's determination of what is in the conservatee's best interests is an ultimate issue deduced from other facts in the record, we review that determination for an abuse of discretion. *See Maxfield v. Maxfield*, 452 N.W.2d 219, 221 (Minn.1990); *cf. In Re Conservatorship of Torres*, 357 N.W.2d at 340.

Appellants argue that section 525.56, subd. 3(6) requires that Brady's place of abode be moved to her daughter, Maureen's, home in Pennsylvania. Appellants contend that living in a private home is always going to be less restrictive of a conservatee's civil rights and personal freedom than living in any assisted-living or other health care facility. The appellants, however, offer no evidence in this record, beyond their mere assertion, to support that contention. We are not prepared to adopt their assertion without adequate support in the record. Moreover, because the ultimate question to be answered is what is in the conservatee's best interests, such a blanket conclusion is unwarranted. The particular facts of each case will determine what is least restrictive.

■ Here, appellants, as with their assertion that living in a private home is always going to be less restrictive of a conservatee's civil rights and personal freedom than any assisted living or other health care facility, point to no specific facts in the record supporting their argument that Brady's civil rights and personal freedom will be less restricted living in her daughter, Maureen's, home in Pennsylvania than they would be in an assisted living or other health care facility in Minnesota. While our review of the record suggests that Brady will not be subject to abuse or neglect in either Minnesota or Pennsylvania, it is clear that due to her illness, her civil rights and personal freedom will be restricted wherever her place of abode is determined to be, with the result that she will not be able to come and go as she pleases or engage in activities of her

choosing. Based on the record before us and on appellants' failure to identify specific facts in the record indicating that living with her daughter, Maureen, will be less restrictive of Brady's civil rights and personal freedom than living in an assisted living or other health care facility in Minnesota, we conclude that the district court did not abuse its discretion.

■ The facts found by the district court that support the conclusion that Minnesota should be Brady's place of abode and where she should live include the fact that in Minnesota, Brady will be closer to more of her family; the fact that in Minnesota she will be in the community where she spent most of her life; the fact that Brady's current and future medical needs are covered by insurance in Minnesota while not so covered in Pennsylvania resulting in lower medical expenses; the fact that before Brady's move she was doing well and appeared happy living at The Kenwood assisted living facility; the fact that The Kenwood or some other Minnesota assisted living facility would meet her current and anticipated future needs; and the fact that with Minnesota as her place of abode, it will be easier for the court to continue to monitor her situation.

The primary fact supporting Maureen's home in Pennsylvania as Brady's place of abode is the fact that in Pennsylvania, she would be living in a loving family member's home. As a result, she will likely have more personal attention, sustained family contact, and privacy. Further, as appellants argue, as long as Brady is able to remain in Maureen's home, living in Pennsylvania will be less expensive than living in an assisted living facility in Minnesota. However, this fact is undercut somewhat by the fact that Brady's condition will in all likelihood continue to deteriorate to the point where eventually Brady will have to move to an assisted-living facility, resulting in increased costs to Brady.

Our review is for an abuse of discretion. Were our review de novo or were we making the determination in the first instance, it is possible that we might have concluded that Brady's place of abode should be with her daughter, Maureen, in Pennsylvania. But that is not our role. Given our standard of review, we can only conclude, on this record, that the district court did not abuse its discretion when it determined that Minnesota is Brady's place of abode.[5]

■ Next, we address the appellant's claim that the district court did not seriously consider Brady's expressed preference to live in Pennsylvania with her daughter, Maureen. This argument has no merit. When deciding on her place of abode, Minn.Stat. § 525.539, subd. 7(1) (1998) requires the court to consider the "reasonable preference of the * * * conservatee, if the court determines the * * * conservatee has sufficient capacity to express a preference." A plain reading of subdivision 7(1) can only lead to the conclusion that the district court is not required to consider the conservatee's expressed preference at all when the conservatee lacks sufficient capacity to express a preference. Here, the district court specifically found in its November 3, 1997 order that Brady was incapacitated and that she had not expressed intent to change her domicile to Pennsylvania while she was competent. These findings have never been challenged. Given these findings, the district court had no obligation under the statute to consider Brady's expressed preference to live in Pennsylvania with her daughter, Maureen, and therefore could not have abused its discretion

---

5. The district court's June 18, 1998 order requires that Brady be returned to Minnesota to live in The Kenwood or another assisted living facility. Although the record suggests that Brady's condition has changed since the date of that order, the record does not indicate whether an assisted living facility is still appropriate or whether she will need a higher level of health care, conditions that may be appropriate for the district court to consider in the future.

by not "seriously" considering that prefer-ence.

Affirmed.