In the Matter of the WELFARE OF the CHILDREN OF J.R.B. and J.D.B., Parents.

Nos. A11–604, A11–615.

Court of Appeals of Minnesota.

Oct. 25, 2011.

Review Denied Jan. 17, 2012.

Matthew D. Rich, Grundhoefer & Ludescher, P.A., Northfield, MN, for mother J.R.B.

James R. Martin, Martin Law Office, Faribault, MN, for father J.D.B.

Jennifer J. Nelson, Assistant Rice County Attorney, Faribault, MN, for respondent Rice County.

Considered and decided by SCHELLHAS, Presiding Judge; KLAPHAKE, Judge; and CRIPPEN, Judge.

## OPINION

CRIPPEN, Judge.*

The district court denied a prior petition to terminate appellants' parental rights, and respondent Rice County later filed a second petition for similar relief. After a trial on the second petition, the district court terminated parental rights based on determinations under four statutory bases for this remedy. Both parents appealed, and this court consolidated the appeals.

---

\* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

The district court's findings of the underlying facts address the statutory factors relevant to the bases for terminating parental rights that were invoked by the district court; those findings are not clearly erroneous, and the district court did not abuse its discretion in making the ultimate findings that four bases to terminate appellants' parental rights existed. Further, the district court did not abuse its discretion in ruling that termination of appellants' parental rights is in the children's best interests. Because of these determinations on review, we affirm.

## FACTS

Appellants J.R.B. (mother) and J.D.B. (father) are parents of a daughter and a son. Because of mother's chemical abuse and its impact on the children and because of father's lack of involvement in the children's lives, among other considerations, respondent Rice County Social Services successfully petitioned the district court to adjudicate the children in need of protection or services (CHIPS), and the district court placed the children in foster care. The county later petitioned to terminate appellants' parental rights (TPR). At the time of the January 2010 TPR trial, father was incarcerated. The district court declined to terminate either party's parental rights but ruled that the children would remain in foster care and be returned when appellants "obtain[ed] appropriate, stable housing, and a source of income sufficient to provide for themselves and the children."[1]

Between March and October 2010, the district court held five intermediate disposition hearings regarding the children. After the first hearing, the court ordered that the children remain in foster care and established case plan requirements for both parents. About a week later, father was incarcerated for a parole violation. The next two hearings reviewed mother's continuing difficulties, including a jailing for probation violations. Father was released from his most recent incarceration five days after the second hearing.

Continuing problems of both parents were reviewed at the fourth interim hearing. Although the court found it necessary to continue foster care for the children, expanded visitation was offered for the children. Neither parent was present for the fifth hearing on October 28, 2010. By that time, a warrant had been out for father's arrest for almost two months, and mother had had no contact with her attorney or with her social worker for a week. The court reviewed the sparse use of visitation opportunities by either parent. Other parenting failures were further documented. On the day of the hearing, father was re-incarcerated for another parole violation. The district court ordered the county to file a petition to terminate appellants' parental rights.

Father appeared at the second TPR trial. Mother appeared for five of the six days of trial, but was late four of those five days, and failed to attend the final day. After trial, the district court ordered termination of appellants' parental rights on four statutory bases, including that the children were neglected and in foster care. It also ruled that termination is in the children's best interests and that the county had made reasonable efforts to reunify the family.

1. The court found grounds for termination of mother's rights under Minn.Stat. § 260C.301, subd. 1(b)(5) (2010) (failure to correct earlier conditions). Because father had been omitted from earlier case plans, due to his incarceration, the court found that termination of the rights of either parent would not be in the best interests of the children.

## ISSUES

1. What is the standard of review?

2. Is the determination that the children are neglected and in foster care supported?

3. Is termination of appellants' parental rights in the children's best interests?

4. Was father denied due process of law?

## ANALYSIS

### I.

The district court terminated appellants' parental rights based on conclusions that they failed to satisfy the duties of the parent-child relationship, they are palpably unfit to be parties to the parent-child relationship, they failed to correct the conditions leading to the children's out-of-home placement, and the children were neglected and in foster care. *See* Minn.Stat. § 260C.301, subds. 1(b)(2), (4), (5), (8) (2010) (respectively).

Appellants challenge the district court's rulings on each of the bases for terminating their parental rights but do so commonly without specifically identifying particular findings of fact they believe to be unsupported by the record, and without explicitly addressing whether the district court, in light of its findings of the facts, reasonably determined whether a particular basis for terminating parental rights was present. Because these arguments do not contemplate this court's standard of review of a district court's decision to terminate parental rights, we take this opportunity to address appellate review in termination matters.

 The nine statutory bases for involuntarily terminating parental rights are set out in Minn.Stat. § 260C.301, subd. 1(b) (2010). Determining whether any particular statutory basis for involuntarily terminating parental rights is present requires the district court to make findings on multiple statutory factors,[2] and to decide whether its findings on those factors show the statutory basis for termination to be present. Appellate courts

> review the termination of parental rights to determine whether the district court's findings address the statutory criteria and whether the district court's findings are supported by substantial evidence and are not clearly erroneous. We give considerable deference to the district court's decision to terminate parental rights. But we closely inquire into the sufficiency of the evidence to determine whether it was clear and convincing.

*In re Welfare of Children of S.E.P.*, 744 N.W.2d 381, 385 (Minn.2008) (citations omitted).

 Two considerations are implicit in this two-part process for reviewing a district court's decision regarding whether a particular statutory basis for involuntarily terminating parental rights is present. First, that a district court's determination of whether a particular statutory basis for involuntarily terminating parental rights is present generally is not a finding in the same sense as the finding of an underlying fact, like the date a child was placed in

---

**2.** Except for a child being abandoned under Minn.Stat. § 260C.301, subd. 1(b)(1), and being neglected and in foster care under Minn. Stat. § 260C.301, subd. 1(b)(8), each statutory basis for involuntarily terminating parental rights explicitly requires the district court to consider multiple factors. *See id.*, subd. 1(b).

Multiple statutory considerations for determining whether a child is abandoned are recited in Minn.Stat. § 260C.301, subd. 2 (2010), and multiple considerations for determining whether a child is neglected and in foster care are recited in Minn.Stat. §§ 260C.007, subd. 24, .163, subd. 9 (2010).

foster care.[3] Second, that a district court's determination of whether a particular statutory basis for involuntarily terminating parental rights is present generally is the result of the district court's assessment of whether its findings of the underlying facts regarding the pertinent statutory factors show the existence of the statutory criteria relevant to the statutory basis for terminating parental rights at issue. Thus, to determine whether a particular statutory basis for involuntarily terminating parental rights is present, a district court finds the underlying facts regarding the statutory criteria relevant to a particular basis for terminating parental rights and then, in light of its findings of those underlying facts, exercises its judgment to address whether that basis for terminating parental rights is present.

Regarding review of a district court's exercise of its judgment in determining whether underlying facts, in light of multiple statutory criteria, show a particular legal condition to be present, the supreme court, in a child-custody dispute, stated:

> Our concern here is not with the findings of fact but with the conclusions drawn from those facts. Particularly in cases of this kind, where the trial court is weighing statutory criteria in light of the found basic facts, the trial court's conclusions of law will include determination of mixed questions of law and fact, determination of "ultimate" facts, and legal conclusions. In such a blend, the appellate court may correct erroneous applications of the law. As to the trial court's conclusions on the ultimate issues, mindful of the discretion accorded the trial court in the exercise of its equitable jurisdiction, the reviewing court reviews under an abuse of discretion standard.

*Maxfield v. Maxfield,* 452 N.W.2d 219, 221 (Minn.1990).

The concept that findings of basic or underlying fact are reviewed for clear error while "ultimate facts" and "mixed questions of law and fact" (both often stated in "the trial court's conclusions of law") are reviewed for an abuse of discretion is not limited to custody disputes that resolve the best interests of the child; rather, it is an approach of general applicability to various statutory criteria;[4] and applying that

---

**3.** If determining whether a particular statutory basis for involuntarily terminating parental rights was present was the same as finding an underlying fact, reviewing the district court's determination of whether a basis for termination of parental rights existed would not require the two-part process set out by the supreme court; a reviewing court would simply consider whether the district court's finding was clearly erroneous.

**4.** *See, e.g., Rubey v. Vannett,* 714 N.W.2d 417, 423–24 (Minn.2006) (referring to this aspect of *Maxfield* when reviewing a district court's dismissal of a motion for a new trial or amended findings, and reviewing "the district court's decision to dismiss the motion for an abuse of discretion"); *In re Conservatorship of Brady,* 607 N.W.2d 781, 784 (Minn.2000) (citing *Maxfield* for the idea that "[b]ecause the district court's determination of what is in the conservatee's best interests is an ultimate is-

sue deduced from other facts in the record, we review that determination for an abuse of discretion"); *Rehn v. Fischley,* 557 N.W.2d 328, 333 (Minn.1997) (noting, when reviewing the applicability of immunity, that "the trial court's determination necessarily will include mixed questions of law and fact" and citing *Maxfield* for the idea that "[i]n this situation, we will correct erroneous applications of law, but accord the trial court discretion in its ultimate conclusions and review such conclusions under an abuse of discretion standard"); *Langford Tool & Drill Co. v. Phenix Biocomposites, LLC,* 668 N.W.2d 438, 445 (Minn.App.2003) (invoking *Maxfield* and applying an abuse-of-discretion standard of review to the district court's "ultimate finding" that a sworn construction statement constituted a lien waiver); *In re Estate of Riggle,* 654 N.W.2d 710, 714 (Minn.App.2002) (applying *Maxfield* and *Rehn* to review a district court's

two-part standard of review is consistent with the two-part process a district court uses to determine whether a statutory basis for involuntarily terminating parental rights is present; the concept is inherent in juvenile-protection caselaw. *See In re Welfare of Child of W.L.P.*, 678 N.W.2d 703, 710 (Minn.App.2004) (determining that the district court "did not abuse its discretion" by terminating parental rights where "the trial court addressed the proper statutory criteria, and the evidence in the record support[ed] the trial court's determination that [a putative father] did not rebut the presumption of unfitness"); *see also In re Booth; Hennepin County Welfare Board v. Booth*, 253 Minn. 395, 400–01, 91 N.W.2d 921, 924–25 (1958) (stating, in the context of a commitment of children as dependent and neglected, that "[t]he natural rights of the parents should be carefully safeguarded but not at the expense of their children. In arriving at a solution, the trial court is vested with broad discretionary powers...") (quotation omitted); *In re Welfare of Child of S.S.W.*, 767 N.W.2d 723, 728–30 (Minn. App.2009) (repeatedly invoking the discretion referred to in *Booth* in a CHIPS appeal); *cf. In re Children of T.R.*, 750 N.W.2d 656, 661 (Minn.2008) (stating that appellate courts "defer to the district court's decision to terminate parental rights"); *In re Children of T.A.A.*, 702 N.W.2d 703, 708 (Minn.2005) (stating that "[t]his court gives deference to a trial court's decision to terminate parental rights").

 Thus, on appeal from a district court's decision to terminate parental rights, we will review the district court's findings of the underlying or basic facts for clear error, but we review its determination of whether a particular statutory basis for involuntarily terminating parental rights is present for an abuse of discretion. In doing so, we are mindful that, in termination proceedings,

> [t]he burden of proof is upon the petitioner and is subject to the presumption that a natural parent is a fit and suitable person to be entrusted with the care of a child. We require ... that the evidence relating to termination must address conditions that exist at the time of the hearing, ... and that it must appear that the present conditions of neglect

determination of "whether a homestead has been abandoned"); *Settlement Capital Corp. v. State Farm Mut. Auto. Ins. Co.*, 646 N.W.2d 550, 555 (Minn.App.2002) (stating, when reviewing the district court's determination of the best interests of the payee of a structured settlement, that, because the parties did not dispute the facts underlying the best-interests determination, "we are essentially reviewing the district court's 'weighing statutory criteria in light of the found basic facts'" and "may correct erroneous applications of the law that factor into the ultimate issue of whether the transfer is in the best interests of [payee] and her dependents" (quoting *Maxfield*)); *Brodsky v. Brodsky*, 639 N.W.2d 386, 392, (Minn. App.2002) (citing *Maxfield* and stating, when reviewing a district court's determination that a contract had been modified, that "[i]n reviewing a district court's conclusions on ultimate issues, this court must carefully examine the explanations given by the court for its decisions"); *Baumann v. Chaska Bldg. Ctr., Inc.*, 621 N.W.2d 795, 800 (Minn.App.2001) (invoking *Maxfield*'s ultimate-facts standard to review whether certain property qualified for a homestead exemption); *In re Medworth*, 562 N.W.2d 522, 524 (Minn.App.1997) (applying *Maxfield* to review the grant of a conservator's petition to change the place of abode of a conservatee); *Kepler v. Kordel, Inc.*, 542 N.W.2d 645, 647–48 (Minn.App.1996) (applying *Maxfield* to review whether an employee was part of a protected class and could, therefore, bring a claim of marital-status discrimination under the Minnesota Human Rights Act), *review denied* (Minn. Mar. 19, 1996); *Jensen v. Hercules, Inc.*, 524 N.W.2d 748, 750 (Minn.App.1994) (applying *Maxfield* to review the "mixed question of law and fact" of whether a discharge was a retaliatory discharge), *review denied* (Minn. April 28, 1995).

will continue for a prolonged, indeterminate period. Finally, this court, while giving deference to the findings of the trial court, will exercise great caution in termination proceedings.

*In re Welfare of Chosa*, 290 N.W.2d 766, 769 (Minn.1980) (citations omitted). But parental rights are not absolute, and they should not be "unduly exalted and enforced to the detriment of the child's welfare and happiness. The right of parentage is in the nature of a trust and is subject to parents' correlative duty to protect and care for the child." *In re P.T.*, 657 N.W.2d 577, 583 (Minn.App.2003) (quotation omitted), *review denied* (Minn. Apr. 15, 2003). Moreover, in terminating parental rights, the best interests of the child are the paramount consideration, and conflicts between the rights of the child and rights of the parents are resolved in favor of the child. Minn.Stat. § 260C.301, subd. 7 (2010).

## II.

A child is neglected and in foster care if the child is in foster care by court order, has parents whose "circumstances, condition, or conduct are such that the child cannot be returned to them" and "whose parents, despite the availability of needed rehabilitative services, have failed to make reasonable efforts to adjust their circumstances, condition or conduct, or have willfully failed to meet reasonable expectations with regard to visiting the child or providing financial support for the child." Minn.Stat. § 260C.007, subd. 24. Here, it is undisputed that, by the time of trial on the second TPR petition, the children had been in court-ordered foster care for two years. On appeal, neither parent argues that the children could have been returned to them before the county filed the second TPR petition, and the district court concluded that the children were neglected and in foster care because neither parent

followed the plan to reunite the family "in any significant way. In fact, neither parent even consistently visited the children during this 24 month period." Both parents challenge aspects of this determination.

### A. Mother

■ "In determining whether a child is neglected and in foster care, the court shall consider, among other factors," seven statutory considerations, including the parent's efforts to adjust the circumstances leading to the child's removal from the home, the parent's visits in the three months prior to the filing of the TPR petition, and the county's efforts to reunite the family. Minn.Stat. § 260C.163, subd. 9. Stating that the only reason that "[t]his case exists" is a January 2009 alcohol-related incident in which she was assaulted, mother asserts that the children are not neglected and in foster care because she made progress on the alcohol-related aspects of her case plan. Mother also argues that the amount of visitation she had in the three months before the county's October 2010 filing of the second TPR petition does not show neglect, and that the county's efforts to assist her in meeting the requirements of her case plan were inadequate.

Mother's assertion that the case arises solely from a January 2009 alcohol-related incident oversimplifies the case. The district court was concerned about mother's abuse of opiates as well as her abuse of alcohol. It cited findings on her multiple positive tests for opiates and her refusal to obtain her prescriptions from a single caregiver as evidence of her problem with opiates and prescription medications. The district court also found that mother failed to maintain sobriety and that, while mother completed treatment, she did not complete aftercare, that there was no testimo-

ny that mother obtained a sponsor, and that there was no verification that mother attended Alcoholics Anonymous after May 7, 2010. Moreover, although the district court admitted that the reason mother missed the final day of the second TPR trial was "unclear," it noted that the county attorney indicated that mother was absent because she was hospitalized with a blood alcohol content of .31.

Regarding visitation, in addition to noting that neither parent consistently visited the children during the 24 months prior to the second TPR trial, the district court detailed mother's scheduled and actual visitations with the children for each month, February 2010 through December 2010. While mother attended "all" of the scheduled visitations for August 2010, she attended 68 of the remaining 106 scheduled visits, and the district court stated that "[t]he most egregious of [mother's] no-shows was the no-show of [mother] on December 27, 2010" because mother had previously "promised the children she would make the visitation with their Christmas presents." Mother missed the December 27, 2010 visitation, as well as the next scheduled visitation, prompting the district court, with specific attention to ages of the children (then, ages two and six), to describe mother's missing of Christmas visitation and delivery of promised presents as "inexcusable." We recognize that mother's missing of multiple Christmas visitations occurred two months after the county filed the second TPR petition rather than within the three months before the filing of that petition, but the district court did not err by relying, in part, on mother's failures, during the TPR proceeding, to regularly visit her children. *Chosa,* 290 N.W.2d at 769 (stating, among other things, "that the evidence relating to termination must address conditions that exist at the time of the hearing"); *In re Welfare of J.S.,* 470 N.W.2d 697, 701

(Minn.App.1991) (noting, in affirming termination of parental rights, the grounds for termination must, among other things, exist at the time of trial), *review denied* (Minn. July 24, 1991).

Regarding the county's efforts to assist the parties, the district court stated that the county "made every reasonable effort to prevent the placement [of the children] and reunify the family in this case." Concerning mother, this conclusion is consistent with the findings that a psychological evaluation was done, and that counseling, aftercare, urinalysis, a rule 25 chemical dependency assessment, parenting classes and other services were available to mother. Mother argues that she was denied an opportunity to prove her parenting abilities when, despite an August 6, 2010 order awarding her expanded visitation under the "least restrictive level of supervision," she did not receive additional time with the children, and instead the county saddled her with additional tasks to complete. Mother's argument, however, fails to address the fact that she had just tested positive for multiple chemicals and that she continued to test positive for chemicals each month through December 2010. Finally, we note that, despite multiple orders by the district court to obtain adequate housing for the children, mother not only did not do so but there were times in 2010 when the county was unable to determine where mother was living.

The district court's findings on these matters address the criteria for determining whether a child is neglected and in foster care as defined in Minn.Stat. § 260C.007, subd. 24. Because clear and convincing evidence supports these findings, they are not clearly erroneous; mother does not enunciate the assertion of clear error on any of these findings. On a record showing that the children were in court-ordered foster care, that mother only

haphazardly exercised visitation, failed to take advantage of available court services, did not secure adequate housing for her children, and had unresolved chemical dependency issues, mother has not shown that the district court abused its discretion by ruling the children to be neglected and in foster care. *See id.* (stating that a child is neglected and in foster care if the foster care is court ordered, the child cannot be returned to the parents, and the parents, despite available services, failed to make reasonable efforts to adjust their circumstances or willfully failed to meet reasonable expectations regarding visitation).

*B. Father*

■ In terminating father's rights on the basis that the children were neglected and in foster care, the district court noted that father missed half of his visits with the children scheduled for periods when he was not incarcerated, including his son's birthday. The district court also found that, of the seven tasks assigned to him by his case plan, father completed only part of one task. Father's sole challenge to the district court's determination that the children were neglected and in foster care is that the county's efforts to assist him were inadequate.

Although the factors to be considered in addressing the reasonableness of county efforts are set out in Minn.Stat. § 260.012(h) (2010), a detailed analysis of those factors is not required here. After identifying the multiple times during 2010 and early 2011 when father was incarcerated, the district court found that, when not incarcerated, "[father] did next to nothing to attempt to get his children back." The district court then spends more than four pages detailing attempted contacts of county personnel with father between April 1, 2010 and November 30, 2010, including a dozen letters, eight face-to-face

meetings and at least five phone contacts, all attempting to get father to participate in, or at least respond to, his case plan and the county's services relevant to that case plan. These contacts included, among other things, information on transportation for visitation, multiple offers of assistance in setting up services, and multiple requests to set up appointments. Father failed to respond in any meaningful way to any of these communications. The district court also describes occasions when county personnel went to where father was living and heard voices but could not get anyone to answer the door, and occasions where father told county personnel that he would meet with a social worker but never appeared. Ultimately, the district court stated that "[t]he record is complete that [the county] attempted to involve [father] in numerous ways and did all [it] could to try to get him involved. The fact that he was not involved was of his choosing." Father had apparently "decided he was not going to make any effort to work with the County to be granted custody of his children once he was out of prison."

The district court's findings on these matters are supported by substantial evidence and are not clearly erroneous; here too, father's arguments do not enunciate error in the underlying findings. Moreover, even if the county actually had other services that might have been helpful to him, it is unclear how, on this record, this would have altered the district court's decision. The county could not get father to respond to the services it offered and he offered no support for assuming that he would be any more likely to respond to offers of other services.

The record supports the district court's ultimate findings that, by the time of trial, the children had been in court-ordered foster care for two years, father had not exercised consistent, meaningful visitation

with the children, had not satisfied any single aspect of his case plan, and had failed to respond to multiple offers of services by the county. The district court did not abuse its discretion in ruling that the children were neglected and in foster care relative to father. *See* Minn.Stat. § 260C.007, subd. 24 (addressing when a child is neglected and in foster care).

## III.

 If the district court finds the presence of at least one statutory basis to terminate parental rights, "the best interests of the child must be the paramount consideration" in deciding whether to actually terminate parental rights, and, if there is a conflict between the interests of a parent and a child, "the interests of the child are paramount." Minn.Stat. § 260C.301, subd. 7. In analyzing a child's best interests, "the court must balance three factors: (1) the child's interest in preserving the parent-child relationship; (2) the parent's interest in preserving the parent-child relationship; and (3) any competing interest of the child." *In re Welfare of R.T.B.*, 492 N.W.2d 1, 4 (Minn.App. 1992). "Competing interests include such things as a stable environment, health considerations and the child's preferences." *Id.* Applying this standard, the district court made an ultimate finding that it is in the best interest of each child to terminate the parental rights of each parent. Both parents challenge aspects of this ruling by the district court. We review a district court's ultimate determination that termination is in a child's best interest for an abuse of discretion. *In re Welfare of Children of D.F.*, 752 N.W.2d 88, 95 (Minn. App.2008).

Mother argues that it is not in the children's best interests to terminate her parental rights because, even if a statutory basis for doing so is present, there is no sustainable basis to terminate father's parental rights. Merit is lacking in this argument because, even if it were viable, we are affirming the district court's termination of father's parental rights.

Both parents, mother at oral argument before this court and father in his brief, challenge the source of the information on which the children's therapist based her opinions that termination is in the children's best interests, noting that the therapist never observed the children interact with the parents. These arguments are unavailing. The therapist interviewed the children 23 times, detailed their gains from foster care, and received no input from appellants despite inviting them, through the caseworker, to contact her.

Mother argues that the extended-family relationships and support system available show that terminating parental rights is not in the children's best interests. Consistent with the opinion of the children's therapist, the district court found that the children need stability, that appellants are unable to provide this stability in the foreseeable future, and that the children are alienated from their parents. The district court concluded that "the children's interests in maintaining the parent-child relationship are therefore diminished." The court also opined that, although appellants may love their children, they failed to show the importance of that relationship by committing to their responsibilities of parenting despite the additional time afforded to them by the denial of the first petition to terminate their parental rights. Under these circumstances, the district court ruled that terminating parental rights was in the children's best interests. The record supports the district court's conclusion. And because mother does not allege that the extended-family support system she cites would provide the children with the stability that they currently need, its al-

leged availability does not show that the district court abused its discretion in ruling that termination was in the best interests of the children.

■ An appellate court may affirm a termination of parental rights if at least one statutory basis for termination is present and termination is in the children's best interests. *S.E.P.*, 744 N.W.2d at 385. The district court did not abuse its discretion in ruling the children to be neglected and in foster care, and did not abuse its discretion in ruling that termination of appellants' parental rights is in the children's best interests. We affirm the district court's termination of parental rights and decline to state a detailed analysis of appellants' challenges to the other bases for terminating parental rights invoked by the district court. We note that the district court's findings of fact regarding those other bases to terminate parental rights address the relevant statutory criteria and that our review of the record shows that those findings are supported by clear and convincing evidence and are not clearly erroneous. Were we to address in detail appellants' challenges to those bases to terminate parental rights, we would conclude that the district court did not abuse its discretion in finding the existence of those statutory bases to terminate parental rights.

### IV.

■ Mother makes a conclusory assertion that father was denied due process of law because he was allegedly denied an opportunity to challenge whether the children were properly adjudicated CHIPS. Generally, "one does not have standing to assert the constitutional rights of a third party." *In re Welfare of R.L.K.*, 269 N.W.2d 367, 372 (Minn.1978). Mother does not explain why she should be allowed to assert father's constitutional rights when he, who is a party to this appeal, does not make that allegation on his own behalf. Further, mother's argument is ultimately based on her assertion that "[t]he evidence clearly shows that [father] is fully capable of serving as a custodial parent to the two children." As set out above, the district court did not err by rejecting this assertion. Mother's due process argument is without merit.

### DECISION

The district court's findings of the underlying or basic facts in this case address the statutory criteria relevant to the four bases for involuntarily terminating the parental rights of mother and father that the district court found to exist. Those findings of the underlying or basic facts are supported by clear and convincing evidence and are not clearly erroneous. Further, the district court did not abuse its discretion in finding the ultimate facts that four statutory bases for involuntarily terminating appellants' parental rights are present here. Neither parent has shown that the district court abused its discretion by ruling that terminating parental rights is consistent with the children's best interests.

**Affirmed.**