*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A14-1722**

In the Matter of the Welfare of the Children of: C. A. S. and C. L. K., Parents

**Filed April 6, 2015**
**Affirmed**
**Connolly, Judge**

Jackson County District Court
File No. 32-JV-14-31

Kenneth R. White, Law Office of Kenneth R. White, Mankato, Minnesota (for appellant C.A.S.)

L. Douglas Storey, Storey Law Office, Windom, Minnesota (for respondent C.L.K.)

Sherry E. Haley, Jackson County Attorney, Jackson, Minnesota (for respondent Des Moines Valley Health and Human Services)

Carma Nordahl, Sheldon, Iowa (guardian ad litem)

        Considered and decided by Connolly, Presiding Judge; Peterson, Judge; and Harten, Judge.[*]

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**CONNOLLY**, Judge

Appellant challenges the termination of her parental rights, arguing that the district court's conclusion that appellant is palpably unfit to be a party to the parent-child relationship is not supported by clear-and-convincing evidence. Because we see clear-and-convincing evidence that supports that conclusion, we affirm.

## FACTS

Respondent C.L.K. is the father and appellant C.A.S. is the mother of three daughters, B., born in May 2001; A., born in March 2005, and K., born in March 2008.[1] The parents separated in November 2008. In March 2009, K.'s paternity was adjudicated and the parents were awarded joint legal and physical custody. The children, then ages seven, four, and one, were to spend alternate weeks with each parent.

Child-welfare assessments were conducted in April 2007, when one of the children went to a neighbor's house saying that they were hungry and did not know where appellant was, and in December 2008, because of reports that the children were running out of their apartment without supervision, did not take baths, and did not have beds, and that appellant had hit and pushed B., then age seven.

In January 2009, law enforcement officers responded to reports of screaming and banging in the apartment. They found inappropriate clothing and insufficient food for the children. B. told them that appellant had pulled her hair and pushed her face into the

---

[1] Although the parental rights of both parents were terminated, and C.L.K. is listed as a respondent, he takes no part in this appeal.

couch.  Later in 2009, reports of appellant's inadequate supervision resulted in another child-welfare assessment.

Early in 2010, B., then age eight, burned A., then age four, on the back of the leg with a light bulb.  Appellant did not seek medical attention for A.  In February 2010,  K., then 23 months old, was hospitalized in a burn unit because of severe burns on her feet.  Appellant claimed that, while she was taking out the garbage, K. went from the first to the second floor, undressed, got in the tub, ran hot water until it reached a scalding temperature, burned her feet, got out of the tub, and went to the hall, where she stood screaming.  Medical personnel stated that the burns were not consistent with immersion in hot water.  As a result of this incident, the children were adjudicated children in need of protection of services (CHIPS) by Martin County and placed in C.L.K.'s temporary legal and physical custody.  Because appellant's boyfriend, J.H., hit and spanked the children, C.L.K. obtained a harassment restraining order to prevent J.H. from having any contact with the children for two years.

In March 2011, while on an overnight visit with appellant, A. received first- and second-degree burns on her face and neck.  Appellant claimed this was the result of A. bumping into a cousin while carrying hot Ramen noodles.  Appellant did not seek medical attention for A. but treated the burned area herself.  When A. returned to C.L.K., he obtained necessary medical attention for the burns. As  a  result  of  this  incident, appellant's visitation was again supervised.

The children were sent to spend the summer of 2012 with appellant.  In July, A. and K. overdosed on Klonopin, a prescription medication. The medication belonged to

3

J.H., who had spent the night with appellant and the children. When law-enforcement officers arrived, they found the apartment dirty, unsanitary, and without food. A. and K. were on the floor shaking, crying, and unable to walk; they were taken by ambulance to a hospital. The children were placed in emergency protective care, then released to C.L.K. Appellant was charged with and pleaded guilty to contributing to the need for child protection or services.

In April 2013, A. disclosed that she had been molested by J.H. when he stayed overnight during the children's unsupervised weekend visit with appellant. A. said J.H. had abused her more than once, putting his penis into her mouth and butt. A. also said she had told appellant about this event, but appellant had not believed her.

When B. and K. were questioned, B. disclosed that J.H. had inappropriately touched her breasts, and K. disclosed that J.H. had put his penis in her mouth while she was sleeping, but stopped when she woke. K. also said she had told appellant about this.

J.H. was charged with multiple counts of first-degree criminal sexual conduct, but A. was found not competent to testify, and the charges were dismissed due to lack of admissible evidence. Appellant claimed that C.L.K. had coerced them to report that J.H. abused them. In May 2013, appellant was charged with misdemeanor tampering with a witness after she engaged in Facebook chats with B. in which she called B. a liar with reference to B.'s allegations of J.H.'s criminal sexual conduct.[2]

---

[2] In February 2014, C.A.S. pleaded guilty to an amended charge, using mail to harass.

In June 2013, respondent Jackson County Department of Human Services (JCDHS)[3] filed a CHIPS petition regarding the children, alleging, among other things, that appellant provided inadequate supervision, J.H. had sexually abused them, and appellant had not responded to the abuse appropriately. Appellant did not attend the hearing on the CHIPS petition. C.L.K. admitted that the children were without necessary care because he was unwilling or unable to provide it: his car had been repossessed, and his home was unclean with mold on the walls. The children were adjudicated CHIPS.

At a CHIPS hearing in September 2013, appellant admitted facts showing that the children were victims of emotional maltreatment because, after they reported that A. had been sexually abused by J.H., appellant posted several Facebook messages calling the children liars. The children were again adjudicated CHIPS. JCDHS filed a petition for emergency protective care for them; the petition was granted because of a prima facie showing that, while they were in C.L.K.'s custody, they were in surroundings or conditions that endangered their health, safety, or welfare. The children were placed in foster care, where they have now been for 18 months.[4]

Five dispositional hearings between October 2013 and July 2014 indicated that the conditions resulting in the children's out-of-home placement had not been corrected and that their parents had not made sufficient progress with the case plan. Both parents were discharged from therapy, C.L.K. because his alcoholism interfered with his ability to be

---

[3] The children had moved to Jackson County. JCDHS has since merged with other departments into respondent Des Moines Valley Health and Human Services.

[4] A county is required to file a termination-of-parental-rights petition "for all children who have been in out-of-home care for 15 of the most recent 22 months." Minn. Stat. § 260C.301, subd. 4 (2014).

emotionally present and appellant because she would not contemplate the possibility that J.H. could have molested the children and continued to tell the children they were liars and should recant their statements of abuse, even whispering these comments to B. during supervised visitation. As a result, the children did not trust appellant, and she was unable to meet their emotional needs.

JCDHS filed a petition for the termination of appellant's parental rights based on her palpable unfitness to be a party to the parent-child relationship. Following trial, the petition was granted. Appellant challenges the termination of her parental rights.[5]

## D E C I S I O N

Whether to terminate parental rights is discretionary with the district court. *In re Welfare of Child of R.D.L.*, 853 N.W.2d 127, 136 (Minn. 2014). This court will "affirm the district court's termination of parental rights when at least one statutory ground for termination is supported by clear and convincing evidence and termination is in the best interests of the child, provided that the county has made reasonable efforts to reunite the family." *In re Welfare of Children of S.E.P.*, 744 N.W.2d 381, 385 (Minn. 2008) (citations omitted). While the reviewing court "give[s] considerable deference to the district court's decision to terminate parental rights," it will also "closely inquire into the sufficiency of the evidence to determine whether it was clear and convincing." *Id.* "In terminating parental rights, the best interests of the child are the paramount consideration,

---

[5] The petition also asked for a termination of appellant's parental rights on the ground that JCDHS's reasonable efforts had failed to correct the situation leading to the children's out-of-home placement. Because we conclude that appellant's palpable unfitness to be a party to a parent-child relationship provided an appropriate basis for terminating her parental rights, we do not address this issue.

and conflicts between the rights of the child and the rights of the parents are resolved in favor of the child. *In re Welfare of Children of J.R.B.*, 805 N.W.2d 895, 902 (Minn. App. 2011), *review denied* (Minn. Jan. 6, 2012).[6]

The district court concluded that appellant's parental rights should be terminated under Minn. Stat. § 260C.301, subd. 1(b)(4) (2014), providing that one ground for termination is a finding that

> a parent is palpably unfit to be a party to the parent and child relationship because of a consistent pattern of specific conduct before the child or of specific conditions directly relating to the parent and child relationship either of which are determined by the court to be of a duration or nature that renders the parent unable, for the reasonably foreseeable future, to care appropriately for the ongoing physical, mental, or emotional needs of the child.

The district court's findings that appellant is and for the reasonably foreseeable future will be unable to care for her children's physical and emotional needs are supported by clear-and-convincing evidence.

### 1. The Children's Physical Needs

Appellant argues that the physical harm to the children, i.e., the burns to K.'s feet in 2010 and to A.'s leg in 2010 and her face and neck in 2011, were isolated incidents and "[c]hildren are going to be injured at times, regardless of the best efforts of parents." This is true, but the fact that the children suffered burns is not the only issue here. Appellant's failure to seek medical attention for A.'s burns on either occasion is another issue, and appellant's unconvincing explanation of how a 23-month-old child in a few

---

[6] Appellant does not oppose the district court's conclusion that the termination of her parental rights is in her children's best interests.

minutes managed to burn her feet with scalding water so that she required hospitalization in a burn unit is a third issue.

Moreover, appellant does not address the major physical harm sustained by A. and K. in 2012 when they had to be taken to the hospital because they overdosed on a prescription medication left within their reach. While accidents do happen to children, appellant's failure to supervise them (assuming that K.'s burns were a result of lack of supervision), to get medical attention for A.'s burns, and to keep medications out of the children's reach so that A. and K. each suffered two significant injuries between 2010 and 2012 indicates an inability to care for their physical needs.

**2. The Children's Emotional Needs**

Appellant does not claim that the issues arising from the children's allegation of sexual abuse by J.H. have been resolved; she argues instead that "the sexual abuse issue can be addressed in the future." She does not dispute the district court's findings that "[her] recent resumption of her relationship with [J.H.,] the abuser of her children, feeds her children's fears that she will not protect them," that the children "do not trust her to care for them or believe them," and that the children "express anger because they feel [she] has chosen [J.H.] over them."

Moreover, appellant admits in her brief that: (1) she "has consistently denied that such abuse occurred"; (2) she "has failed to acknowledge the impact the claims [of J.H.'s sexual abuse] have had on her daughters"; (3) she "has, admittedly, made little progress in addressing the issue"; (4) she left J.H., but began to see him again after the criminal charges against him were dismissed; and (5) she "[failed] in therapy to acknowledge the

8

possibility of the sexual abuse and to empathize with her children." Appellant concedes that, "if this [sexual-abuse] issue is no longer [to be] a justification for termination of parental rights," she must "address these issues in therapy sessions," but she has made no further efforts to engage in therapy and, as her previous therapist's testimony indicates, she was discharged because she made no progress in dealing with the issue.

Appellant's therapist saw her 11 times between August 2013 and March 2014 concerning the recommendations of her psychological evaluation that she deal with her cognitive restructuring and internal cohesion, i.e., the fact that what she believes is not consistent with reality. The therapist testified that: (1) appellant did not have insight into changes she needed to make and did not make any progress on the therapeutic goals during their 11 sessions; (2) she was discharged because she and the therapist could not find any need for change that they agreed on; (3) they talked about access to other professionals who could provide therapy if appellant wanted it and who were available on a crisis hot line; (4) appellant had recently (i.e., before the TPR hearing) begun seeing the therapist again, but this was not to deal with the sexual-abuse issue but rather with the stress of the TPR process; (5) progress on issues is necessary if appellant is to parent her daughters; (6) appellant has difficulty communicating in a nonthreatening way and needs to address this if she is to parent her children; (7) there has been no progress toward the original treatment goals; (8) appellant has been incapable of getting past the things that prevented her from being able to parent; (9) there has been no movement in appellant's ability to create even the possibility that J.H.'s sexual abuse occurred for her children;

9

and (10) "[appellant] did not believe that [sexual abuse] had happened to her children, so there is no reason for empathy there."[7]

The district court's finding that appellant cannot care for her children's ongoing physical and emotional needs and will not be able to do so for the reasonably foreseeable future are supported by clear-and-convincing evidence.

**Affirmed.**

---

[7] In her brief, appellant mischaracterizes her therapist's testimony when she says he "could not testify that [she] could not appropriately parent her children." The therapist was asked on cross-examination, "[Y]ou had stated that [appellant] would need to make progress on those goals [to be] able to parent her children. Are you saying that at this time she's not able to parent her children?" He answered, "I'm saying we haven't made any progress on the goals." He was then asked, "So, you're not in a position to make that statement?" and answered, "Boy, I don't – I don't think so. No, I don't believe so." The therapist was not asserting that appellant is now able to parent her children; he was asserting that she had made no progress toward the goals she needs to reach before she can parent them.