*This opinion will be unpublished and*
*may not be cited except as provided by*
*Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A15-0806**

In the Matter of the Welfare of the Children of:
J. C. and T. S., Parents.

**Filed October 13, 2015**
**Affirmed**
**Bjorkman, Judge**

Blue Earth County District Court
File No. 07-JV-15-576

Michael Mountain, Mankato, Minnesota (for appellant J.C.)

Thomas K. Hagen, Rosengren Kohlmeyer Law Office Chtd., Mankato, Minnesota (for appellant T.J.S.)

Ross E. Arneson, Blue Earth County Attorney, Susan DeVos, Assistant County Attorney, Mankato, Minnesota (for respondent county)

Susan Kohls, St. Peter, Minnesota (guardian ad litem)

        Considered and decided by Kirk, Presiding Judge; Johnson, Judge; and Bjorkman, Judge.

## UNPUBLISHED OPINION

**BJORKMAN**, Judge

        Appellant challenges the termination of his parental rights to two children, arguing that there are no statutory grounds for the termination.  Because clear and convincing

evidence shows that reasonable efforts by the county failed to correct the conditions leading to the children's out-of-home placement, we affirm.

## FACTS

Appellant T.J.S. (father) and J.C. (mother) are the parents of S.J.S., born September 2009, and S.P.S., born May 2013. They were also the parents of M.S. and C.S., who died as infants. Blue Earth County Child and Human Services (BECHS) became involved with the parents in April 2008, when both mother and newborn M.S. tested positive for THC. Mother and father agreed to voluntary child-protection services, complied with a case plan and the case was closed in late August. Less than a month later, M.S. died of an acute asthma attack.

In 2010, BECHS received reports that father assaulted mother and that mother, who was pregnant, tested positive for THC. C.S. was born in January 2011, and died a few months later of Sudden Infant Death Syndrome. While investigating the death, law enforcement noted concerns about the safety and condition of the couple's home, and discovered drug paraphernalia.

BECHS reinstated services in April 2011 after receiving numerous reports of unsafe and unsanitary home conditions, chemical use, domestic abuse, lack of supervision, and father's mental-health issues. Because the parents made little progress, BECHS filed a petition in September, alleging that S.J.S. was in need of protection or services. Both parents admitted the petition. The district court adjudicated S.J.S. a child in need of protection or services (CHIPS) and ordered continued protective services.

On June 23, 2012, an off-duty police officer found two-year-old S.J.S. unattended in the middle of a street wearing only a dirty diaper. Mother advised law enforcement that father was watching S.J.S. at the time despite the fact that father was only permitted to have supervised contact with S.J.S. On June 28, the district court granted BECHS immediate custody of S.J.S. and he entered foster care. S.J.S. returned to mother's care on a temporary basis in early February 2013, but father's contact with S.J.S. was limited to supervised visits. Mother gave birth to S.P.S. on May 3. S.J.S. returned to mother's custody in late August.

In October, father was convicted of selling a controlled substance and placed on probation. He began an inpatient chemical-dependency treatment program in December, but left within the first week. The next month, he entered a different inpatient program, which he successfully completed. Father then moved to a halfway house, but was eventually discharged at the request of staff.

On February 22, 2014, BECHS filed a CHIPS petition as to S.P.S., and requested immediate custody of both children. The district court granted BECHS custody of the children and they were placed in foster care. Case manager Sarah Johnson updated father's case plan, requiring him to: maintain a stable, secure, and safe home; address his mental-health issues; abstain from using alcohol and drugs; comply with drug testing; comply with his probation requirements; follow all parenting-assessment recommendations; and take all prescribed medications.

In May, father was admitted into Family Dependency Treatment Court, but quit the program after being threatened with termination due to lack of progress. He was

subsequently admitted into Adult Drug Court. In December, father was sanctioned by the drug court for living in an unapproved residence and received a 21-day jail sentence. After his release, father began renting a bedroom in a house that he acknowledged was an inappropriate environment for children.

Father had supervised visits with both children while they were in foster care. But he was often unprepared for these visits, frequently arrived late or asked to end visits early, and at times fell asleep while he was with the children. The supervised visits originally took place at a government center, but were moved to an alternate location due to father's disruptive and threatening behavior. The frequency of visits decreased over time because they were disruptive to the children, and exacerbating the children's behavioral issues that had begun to improve while they were in foster care. S.J.S.'s therapist, John Seymour, Ph.D., eventually recommended that visits cease due to the observed detrimental effect on the child.

In November 2014, father underwent a parenting-capacity assessment with Barbara Carlson, a licensed clinical and drug and alcohol counselor. Carlson indicated that it was unlikely father has the ability to successfully parent his children and did not appear to recognize the negative impact his persistent chemical dependency and legal issues had on his family. She also stated that the bond between father and his children was not secure and at times the children seemed reluctant to interact with him.

Deena McMahon, a therapist and licensed social worker, further assessed the attachment between father and the children the following month. Father declined to participate in the interview component of this assessment. McMahon described the

4

visitation session she observed as chaotic, noting that father struggled to manage both children at once. She observed that father did not establish boundaries for the children or set a good example with his own behavior. McMahon also stated that father demonstrated "little empathy" towards his children and had "no insight" into how his choices and actions may have harmed them. She concluded that father has "chronic parental capacity issues" making it likely the children would return to foster care if they were again placed in his care.

On February 9, 2015, BECHS petitioned to involuntarily terminate father's parental rights.[1] At that time, the children had been in out-of-home placement for a year. Father denied the petition and the case was tried on March 26. The district court found that father failed to fully comply with his case plan and that termination was justified because (1) father failed to comply with his parental duties, Minn. Stat. § 260C.301, subd. 1(b)(2) (2014); (2) father is palpably unfit to parent, Minn. Stat. § 260C.301, subd. 1(b)(4) (2014); (3) reasonable efforts have failed to correct the condition that led to the children's out-of-home placement, Minn. Stat. § 260C.301, subd. 1(b)(5) (2014); and (4) the children are neglected and in foster care, Minn. Stat. § 260C.301, subd. 1(b)(8) (2014). The district court also concluded that termination is in the children's best interests because they need a safe, stable home and appropriate parental care, which father is not and will not be able to provide in the reasonably foreseeable future. Father appeals.

---

[1] Mother consented to the termination of her parental rights.

**D E C I S I O N**

Parental rights may be terminated "only for grave and weighty reasons." *In re P.T.*, 657 N.W.2d 577, 591 (Minn. App. 2003), *review denied* (Minn. Apr. 15, 2003) (quotation omitted). Termination is appropriate where clear and convincing evidence supports at least one statutory ground for termination, and termination is in the best interests of the child. *In re Welfare of Children of S.E.P.*, 744 N.W.2d 381, 385 (Minn. 2008). We review a district court's factual findings "to determine whether they address the statutory criteria for termination and are not clearly erroneous." *In re Welfare of Children of K.S.F.*, 823 N.W.2d 656, 665 (Minn. App. 2012). So long as the record provides clear and convincing support for termination, we defer to the district court's determination that the statutory requirements for termination have been established. *In re Welfare of Children of J.R.B.*, 805 N.W.2d 895, 899-900 (Minn. App. 2011), *review denied* (Minn. Jan. 6, 2012).

Father challenges all four of the statutory grounds that the district court relied on to terminate his parental rights. But he does not dispute the district court's best-interests determination.

A district court may terminate parental rights if clear and convincing evidence shows that reasonable efforts have failed to correct the conditions leading to the child's out-of-home placement. Minn. Stat. § 260C.301, subd. 1(b)(5); *S.E.P.*, 744 N.W.2d at 385. It is presumed that reasonable efforts have failed upon a showing that (1) a child under the age of eight has resided outside the parental home for six months, unless there is regular contact and the parent has substantially complied with the out-of-home

6

placement plan; (2) the court approved an out-of-home placement plan; (3) the conditions leading to the child's out-of-home placement have not been corrected; and (4) reasonable efforts have been made by the social-services agency to rehabilitate the parent and reunite the family. *Id.*

Father only challenges the district court's determination as to the final factor—that BECHS's efforts to reunite the family were reasonable under the circumstances. Specifically, father contends that BECHS's efforts were inadequate because they "were not molded to [father's] particular situation," and in the absence of such tailored services there was nothing he could do on his own that would lead to his "ultimate goal of reunification." We are not persuaded.

When determining whether reasonable efforts were made, the district court must examine "the length of the time the county was involved and the quality of effort given." *In re Welfare of H.K.,* 455 N.W.2d 529, 532 (Minn. App. 1990), *review denied* (Minn. July 6, 1990). The county's efforts must be directed towards alleviating the conditions that gave rise to the children's out-of-home placement, and conform to the problems presented. *In re Welfare of Child of J.K.T.*, 814 N.W.2d 76, 88 (Minn. App. 2012). And these efforts must "go beyond mere matters of form" to include genuine assistance that is tailored to a parent's needs. *In re Welfare of J.A.*, 377 N.W.2d 69, 73 (Minn. App. 1985), *review denied* (Minn. Jan. 23, 1986).

The undisputed evidence shows that BECHS has provided a myriad of services to father for many years. Since 2008, BECHS has provided: case management by social worker Sarah Johnson; parenting and attachment assessments and recommendations;

7

chemical-dependency treatment; individual therapy to address mental-health issues; individual therapy for S.J.S.; supervised visits; foster care; two drug-court options; anger-management counseling; and parenting-skills instruction during supervised visits. Father does not identify other types of services that BECHS reasonably should have provided.

Moreover, the services provided have been both ongoing and intensive. Case manager Johnson has worked with father since 2012, creating and updating a court-approved case plan with which father did not substantially comply. The parenting and attachment assessors provided recommendations to help father develop a more stable relationship with his children, as well as improve his own well-being. BECHS has also facilitated supervised visitation over the years, with the frequency decreasing only after S.J.S.'s therapist determined that these visits were detrimental. Visitation supervisor and parenting educator Lisa Hopkins testified that she provided individual parenting training to father during his weekly visits in late 2014. This instruction ended only because father was incarcerated in December 2014.

The record amply demonstrates that even with the benefit of these services father has not made sufficient progress towards meeting his basic needs or the needs of his children. The record consistently shows that father views himself as a victim and does not comprehend the impact of his problematic behaviors on his children. Father's own testimony confirms this lack of awareness; he testified that BECHS was not telling him what he needed to do to get his children back, even though the record demonstrates that BECHS has worked with him on addressing his personal and parenting issues for years.

We do note that father has recently demonstrated a commendable commitment to sobriety. Father testified, and his probation officer confirmed, that he had been sober for almost 14 months at the time of trial—the longest period of sobriety father has experienced since he was eight years old. But father is only beginning his recovery journey. As Deena McMahon emphasized, father still needs to address serious personal and mental-health issues that stem from abuse he experienced as a child. Only when he does so, which McMahon opined will likely take years, can he successfully meet his children's needs.

On this record, we conclude that father did not rebut the statutory presumption. And we discern no abuse of discretion in the district court's determination that clear and convincing evidence shows that reasonable efforts have failed to correct the conditions leading to S.J.S. and S.P.S.'s out-of-home placement.

Because we conclude that reasonable efforts have failed to correct the conditions leading to the children's out-of-home placement, *see* Minn. Stat. § 260C.301, subd. 1(b)(5), we decline to consider his arguments regarding the remaining statutory termination grounds. *J.R.B.*, 805 N.W.2d at 906 (holding that this court may affirm a termination of parental rights if at least one statutory basis for termination is present).

**Affirmed.**