*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1136
A15-1138**

In the Matter of the Welfare of the Children of:
B.B., Parent

**Filed December 21, 2015
Affirmed
Ross, Judge**

Washington County District Court
File No. 82-JV-15-155

Dorothy M. Gause, Dorothy M. Gause, LLC, Stillwater, Minnesota (for appellant B.B.)

Megan Hunt, Hunt Law Office, Stillwater, Minnesota (for appellant J.H.)

Peter Orput, Washington County Attorney, Erin A. Johnson, Assistant County Attorney, Stillwater, Minnesota (for respondent)

Geri Robbins, Stillwater, Minnesota (Guardian ad Litem)

Considered and decided by Chutich, Presiding Judge; Ross, Judge; and Hooten, Judge.

### UNPUBLISHED OPINION

**ROSS**, Judge

In this consolidated appeal, appellant-mother B.B. and appellant-father J.H. challenge the district court's order terminating their parental rights. Because the district court did not abuse its discretion, we affirm.

**FACTS**

B.B. is five-year-old M.A.L. and one-year-old C.G.H.'s mother. J.H. is C.G.H.'s father. Washington County Child Protection first became involved with B.B. because of unsafe living conditions in B.B.'s apartment in 2011 when M.A.L. was one year old. A social worker helped B.B. correct the problem and helped B.B. begin therapy for her mental-health issues.

In April 2013, the county placed M.A.L. in foster care because B.B. was homeless. B.B. agreed to an out-of-home placement plan that included services for housing, mental-health treatment, chemical dependency, and parenting skills. M.A.L. stayed in foster care about 13 months. During that time, B.B. met J.H. and moved in with him. The district court released M.A.L. to B.B.'s full-time care in spring 2014 based on a social worker's recommendation.

B.B. birthed C.G.H. in December 2014. In the next two weeks, police responded several times to B.B. and J.H.'s apartment because of their disputing. B.B. summoned the police on January 2, 2015, when J.H. allegedly tried to hit her, threw water on her, and broke windows. She also reported that J.H. threw a box that almost hit M.A.L. Police arrested J.H. and charged him with domestic assault and disorderly conduct. B.B. later told Dakota County officials that she wanted the charges dropped and that she opposed the issuing of a no-contact order against J.H. J.H. pleaded guilty to misdemeanor domestic assault and became the subject of a district court domestic-abuse no-contact order.

In January the district court issued an order for M.A.L.'s immediate removal. The county filed a petition on C.G.H.'s behalf to have him designated a child in need of

protection or services. Washington County placed both children in foster care and filed a petition to terminate B.B.'s and J.H.'s parental rights.

The district court conducted a trial in May and June 2015. At trial B.B. acknowledged having contact with J.H. through telephone and text-messaging conversations despite the no-contact order. She also testified that her relationship with J.H. had been "toxic" and that it probably affected M.A.L. and C.G.H. negatively. She stated that she had been concerned about her safety before the January assault, but she claimed that their disagreements had never previously become physical. At the time of trial, she had just begun a program addressing domestic violence.

The district court issued an order terminating B.B.'s and J.H.'s parental rights. Both parents appeal.

## DECISION

The parents separately challenge the district court's order terminating their parental rights. "We give considerable deference to the district court's decision to terminate parental rights." *In re Welfare of Children of S.E.P.*, 744 N.W.2d 381, 385 (Minn. 2008). The district court may terminate parental rights if clear and convincing evidence establishes that at least one statutory ground for termination exists and termination is in the child's best interests. *In re Welfare of Children of R.W.*, 678 N.W.2d 49, 55 (Minn. 2004). We review the district court's findings of fact for clear error and its determination of whether a particular statutory basis for termination is present for abuse of discretion. *In re Welfare of Children of J.R.B.*, 805 N.W.2d 895, 901 (Minn. App. 2011), *review denied* (Minn.

Jan. 6, 2012). We will first address the statutory bases for termination found by the district court before turning to its best-interest analysis.

## I

The district court found termination appropriate on four statutory grounds: (1) both parents failed to comply with the duties imposed by the parent–child relationship under Minnesota Statutes section 260C.301, subdivision 1(b)(2) (2014); (2) both parents are palpably unfit to be parties in the parent–child relationship under subdivision 1(b)(4); (3) reasonable efforts have failed to correct the conditions leading to the out-of-home placement under subdivision 1(b)(5); and (4) the children are neglected and in foster care under subdivision 1(b)(8). The court also found that termination is warranted as to J.H. under subdivision 1(b)(9) because of his prior conviction for third-degree criminal sexual conduct.

We address each parent's termination appeal issues individually.

### *Mother B.B.*

The county's case against B.B.'s parental rights is sufficient for us to affirm on at least one statutory ground. Although the district court found four statutory bases to terminate B.B.'s parental rights, we will focus only on Minnesota Statutes section 260C.301, subdivision 1(b)(5), which provides that the district court may terminate parental rights if it finds that reasonable efforts have failed to correct the conditions that led to the child's placement outside the home. The district court can presume that reasonable efforts have failed if the county establishes four elements: (1) "a child has resided out of the parental home . . . for a cumulative period of 12 months within the

preceding 22 months;" (2) the court has approved an out-of-home placement plan; (3) the conditions leading to a child's out-of-home placement have not been corrected; and (4) social services has made reasonable efforts to rehabilitate and reunite the family. *Id.* Under the third element, the court may presume that the conditions leading to the out-of-home placement have not been corrected on the county's showing that the parent has not "substantially complied with the court's orders and a reasonable case plan." *Id.*, subd. 1(b)(5)(iii).

The district court determined that reasonable efforts failed to correct the conditions leading to the out-of-home placement. It calculated that M.A.L. resided outside the home for 17 months and C.G.H. for five months. It determined that neither parent substantially complied with the court's reasonable case plan and that the county undertook reasonable efforts to reunite the family. B.B. argues that the county offered insufficient evidence to support the district court's findings that reasonable efforts have been made to reunite the family and that she has not substantially complied with her case plan.

We are satisfied that the district court's findings concerning those efforts are sufficient:

> Washington County Community Services has provided case management services to [B.B.] since April 2013, based on out of home placement plans with specific court ordered requirements. Washington County Community Services has provided [B.B.] with housing resources, chemical dependency and psychological evaluations, a parenting assessment, intensive mental health treatment, parenting education, ARHMS worker, public health, in-home family therapy, transportation as necessary to appointments, day care assistance, gas cards, phone cards, gift cards for food, and

5

> domestic violence resources, including shelters and programming.

This finding has considerable support in testimonial and documentary evidence outlining numerous services offered to help B.B. in all the stated ways. B.B. does not explain what additional services the county needed to provide to justify the finding. We conclude that clear and convincing evidence supports the district court's determination that the county made reasonable efforts to reunite B.B. with the children.

And we also will not disturb the district court's finding that B.B. has failed to substantially comply with her case plan. We recognize, as did the district court, that B.B. did in various ways make some effort to adhere to her case plan and to provide a safe home for the children. The district court acknowledged her effort but determined that, although "[B.B.] has completed some portions of the child protection case plan, she has not been able to integrate the skills taught through those services to be able to meet her children's needs for a healthy, safe and stable life." In this close case, given the specific statutory authorization and the evidence the district court relied on for this finding, we conclude that the district court's decision is supported by clear and convincing evidence. That another district court might reasonably have come to a different conclusion cannot guide our review. Given our deference to the district court and the supported findings on the record, we will affirm the determination. We therefore do not address the other stated grounds for termination, but we observe at a glance that they do not immediately appear to be overwhelmingly supported under the limited statutory authority for termination.

*Father J.H.*

The issue is not so close as to J.H.'s parental rights because of a statutory bright line that he has crossed. A district court may terminate parental rights when the parent is convicted of an offense requiring the parent's registration as a predatory offender under Minnesota Statutes section 243.166, subdivision 1b(a)–(b) (2014). Minn. Stat. §§ 260C.301, subd. 1(b)(9); 260.012(g)(5) (2014). The district court determined that J.H. was convicted of third-degree criminal sexual conduct and that he must therefore register as a predatory offender. The record handily supports this finding, and J.H. neither disputes the finding nor contends that the finding does not meet the statutory ground for termination.

Having decided that the record supports the district court's determination that at least one statutory termination ground exists for each parent, we turn to the parties' dispute concerning the best interest of the children.

**II**

B.B. and J.H. separately challenge the district court's finding that termination of parental rights is in the children's best interest. After a district court finds the presence of at least one statutory ground for termination, the issue of the children's best interest becomes central. Minn. Stat. § 260C.301, subd. 7 (2014). Three factors control the consideration: "(1) the child's interest in preserving the parent-child relationship; (2) the parent's interest in preserving the parent-child relationship; and (3) any competing interest of the child." *In re Welfare of R.T.B.*, 492 N.W.2d 1, 4 (Minn. App. 1992). We will review a finding that termination is in a child's best interests for an abuse of discretion. *In re Welfare of Children of D.F.*, 752 N.W.2d 88, 95 (Minn. App. 2008).

7

The parents argue that the district court's best-interests determination is flawed because the court did not specifically refer to the three factors. But the district court did expressly consider each best-interest factor. And the court's findings imply that it considered them in light of competing concerns, as required:

> Both [B.B.] and [J.H.] have attended services throughout the course of these proceedings and they should be given credit for that participation. Where both parents fall short in complying with the case plan is their ability to use what they have learned and to apply those skills to their lives and to their parenting. Washington County Community Services, in conjunction with other agencies, has worked for over two years to help the parents achieve that goal. Both [C.G.H.] and [M.A.L.] have an immediate need for a safe, stable home that is free from domestic violence and conflict. Despite multiple services, neither parent has been able to establish such a home for their children. Given the parents' history and their current actions, the Court has no confidence that they will be able to change their behaviors in the reasonably foreseeable future. Therefore, the Court finds that termination of parental rights is in the best interests of both [M.A.L.] and [C.G.H.].

The record shows that this is not a situation where the district court has completely failed to consider the child's best interests. *See In re Tanghe,* 672 N.W.2d 623, 626 (Minn. App. 2003) (holding that a district court must consider the child's best interests and address those interests in its findings of fact and conclusions of law). It instead demonstrates the district court's careful assessment of the circumstances as framed by the statutory restriction to terminate rights only when the children's best interests are best served by termination. The district court's reasoned assessment also finds support in the testimony of the guardian ad litem, who opined that it is not in the children's best interests to be reunified with the parents because of the amount of time M.A.L. has been placed out of the home

8

and the need for both children to have a stable, permanent home. Although J.H. reasonably argues that this testimony should not have been given weight because the guardian ad litem never interviewed J.H. or observed him interacting with C.G.H., it is the district court's prerogative—not ours—to determine the weight that evidence ought to receive. *In re Welfare of Children of J.B.*, 698 N.W.2d 160, 167 (Minn. App. 2005). We understand J.H.'s frustration with the guardian ad litem's failure to interview him or observe his interaction with the child. But he does not point to any authority indicating that this failure renders the district court's weighing of evidence or consequent fact finding clearly erroneous. Although J.H.'s argument is one that might persuade a fact finder, we will not consider substituting our judgment for the district court's.

**Affirmed.**