Mary F. Moriarty, Fourth District Public Defender, David W. Merchant, Assistant Public Defender, Minneapolis, Minnesota (for appellant father K.L.W.)
Michael O. Freeman, Hennepin County Attorney, Mary M. Lynch, Senior Assistant County Attorney, Minneapolis, Minnesota (for respondent county)
Kimberly T. Walker, St. Louis Park, Minnesota (for respondent mother J.A.C.)
Michael Tepoorten, Juvenile Justice Center, Minneapolis, Minnesota (guardian ad litem)
Considered and decided by Hooten, Presiding Judge; Reyes, Judge; and Cochran, Judge.
HOOTEN, Judge *652 Appellant-father challenges the termination of his parental rights, arguing that he did not egregiously harm his child, he is not palpably unfit to parent his child, and termination is not in his child's best interests. We affirm.
FACTS
Appellant K.L.W. is the father of a child born in January 2012. J.C. is the mother of the child. The child's parents never married and their relationship was "very casual." After J.C. purchased a home, appellant moved in with the child and her in May 2012. The three lived together until November 2013, when J.C. had appellant evicted from the home. Following the eviction, appellant continued to visit the child. At first, he visited a few times per week. Because the child is autistic, has a speech delay, and is on an individualized education program at school, appellant's visits were changed to weekends so as to not disrupt the child's schedule. Ultimately, appellant visited the child approximately every other Sunday.
Sometime in 2017, the Hennepin County Department of Social Services opened an investigation after receiving a report alleging inadequate supervision of the child by J.C. A child-protection investigator was assigned to the case. And in the course of her investigation, she discovered a criminal case against appellant that raised concerns about "his ability to protect and care for the child just based off of concerns about recidivism."
The criminal case involved allegations that appellant sexually abused his cousin's daughter, M.B. The abuse occurred over a period of time spanning from May 2007 (when M.B. was nine years old) until September 2011. Appellant was charged with two counts of first-degree criminal sexual conduct and two counts of second-degree criminal sexual conduct. Two of the charges were for criminal sexual conduct with a complainant under 13 years of age. The other two charges were for sexual abuse involving multiple acts committed over an extended period of time.
Appellant went to trial and was acquitted of the charges involving abuse committed over an extended period of time. It appears from the record that the jury was unable to reach a verdict on the remaining charges, and the case was set for another trial. Appellant ultimately entered an Alford plea to the second-degree charge for sexual contact with someone under the age of 13, and the remaining first-degree charge was dismissed.[1] Appellant received a stay of adjudication and a 25-year probation sentence.
Following its investigation, Hennepin County filed a petition to terminate appellant's parental rights to his child in November 2017. Appellant opposed the petition, and a court trial was held in May 2018. M.B., M.B.'s mother, the child protection investigator, J.C., appellant, and appellant's probation officer testified at trial. The district court terminated appellant's parental rights under Minn. Stat. § 260C.301, subd. 1(b)(6) (egregious harm) and Minn. Stat. § 260C.301, subd. 1(b)(4) (2018) (palpable unfitness). This appeal follows.
ISSUES
I. Did the district court abuse its discretion by determining that appellant met the *653 statutory criteria for egregious harm by clear and convincing evidence?
II. Did the district court abuse its discretion by determining that termination of appellant's parental rights was in the child's best interests by clear and convincing evidence?
ANALYSIS
Appellant challenges the termination of his parental rights. We presume "that a natural parent is a fit and suitable person to be entrusted with the care of a child," In re Welfare of Chosa , 290 N.W.2d 766, 769 (Minn. 1980), and "custody of their children should not be taken from them but for grave and weighty reasons," In re Welfare of P.J.K. , 369 N.W.2d 286, 290 (Minn. 1985) (quotation omitted). But "the law secures parents' right to custody only so long as they shall promptly recognize and discharge their corresponding obligations." P.J.K. , 369 N.W.2d at 290 (quotation omitted). Accordingly, a district court may only involuntarily terminate parental rights if at least one statutory basis for termination exists and it finds that termination is in the child's best interests. Minn. Stat. § 260C.301, subds. 1(b), 7 (2018). If a statutory basis exists, "the best interests of the child must be the paramount consideration." Id. , subd. 7.
We review the termination of parental rights "to determine whether the trial court's findings address the statutory criteria, whether those findings are supported by substantial evidence, and whether those findings are clearly erroneous." In re Welfare of A.R.B. , 906 N.W.2d 894, 897 (Minn. App. 2018) (quotation omitted). We give the district court's decision considerable deference, but nonetheless "closely inquire into the sufficiency of the evidence to determine whether the evidence was clear and convincing." Id.
I. Egregious Harm
Appellant challenges the district court's determination that his parental rights should be terminated under the egregious-harm statute. We review the "determination of whether a particular statutory basis for involuntarily terminating parental rights is present for an abuse of discretion." In re Welfare of Children of J.R.B. , 805 N.W.2d 895, 901 (Minn. App. 2011), review denied (Minn. Jan. 6, 2012).
A district court may terminate parental rights if
a child has experienced egregious harm in the parent's care which is of a nature, duration, or chronicity that indicates a lack of regard for the child's well-being, such that a reasonable person would believe it contrary to the best interest of the child or of any child to be in the parent's care.
Minn. Stat. § 260C.301, subd. 1(b)(6). Egregious harm is defined in Minn. Stat. § 260C.007, subd. 14 (2018) as "the infliction of bodily harm to a child or neglect of a child which demonstrates a grossly inadequate ability to provide minimally adequate parental care." Criminal sexual conduct under Minn. Stat. § 609.343 (2018) is included in the list of conduct that constitutes egregious harm. Minn. Stat. § 260C.007, subd. 14(10). The district court terminated appellant's parental rights to his child under the egregious-harm statute because it found that he had inflicted egregious harm on another child-M.B., his cousin's daughter-while she was in his care by sexually abusing her in violation of Minn. Stat. § 609.343.
Appellant asserts that the egregious-harm statute does not apply to his conduct with M.B. This argument looks to the first line of the egregious-harm statute, which says, "a child has experienced egregious harm in the parent's care ."
*654 Minn. Stat. § 260C.301, subd. 1(b)(6) (emphasis added). Appellant essentially argues that M.B. was not in his "care," for the purposes of this statute, when he sexually abused her.
Appellant relies on In re Welfare of T.P. for this argument. 747 N.W.2d 356 (Minn. 2008). In T.P. , the Minnesota Supreme Court examined the phrase "in the parent's care" and determined that it "has a range of possible meanings." Id. at 360. The supreme court then stated that "the term 'care' is properly understood in the broader sense of the parent and child relationship." Id. at 361. Appellant places special importance on this language and uses it to argue that M.B. was not in his care because he did not have a "parent and child relationship" with her. He supports his argument by asserting that he only ever took on the role of an occasional babysitter of M.B.-as opposed to that of a primary caretaker-and was only an "intermittent guest" in M.B.'s mother's house.
But appellant's reading of T.P. is overly broad. It is important to note the specific facts before the supreme court in T.P. The child subject to the termination-of-parental-rights petition was the daughter of the appellant-mother, but the egregious harm against the child was committed by the child's father. The question before the supreme court was whether the child was in appellant-mother's care when father egregiously harmed her. Id. at 360-61. Crucial to this determination was the question of whether the child had to be in the appellant-mother's physical presence when harmed by the father. Id. at 361. And the supreme court resolved the question by stating that " 'in the parent's care' should not be limited to the physical presence of a parent at the time egregious harm occurs." Id. It was in the context of this question about physical presence that the supreme court noted the different ways that "care" is used in different subsections of Minn. Stat. § 260C.301 and commented that it should be "understood in the broader sense of the parent and child relationship, including providing for the well-being of a child in ways that do not require a parent to be physically present with the child." Id. Thus, the comment about the "parent and child relationship" is meant to clarify what kind of care is contemplated by the statute rather than placing limits on what kind of relationship qualifies under the statute. Accordingly, we do not read T.P. as limiting the egregious-harm analysis to instances of harm inflicted upon children who have a parent-child relationship with the person inflicting the harm.
Because T.P. does not resolve the question of what "in the parent's care" means, we are required to conduct statutory interpretation of the phrase. See id. This is a task we undertake de novo. Id. at 360. "The object of all interpretation and construction of laws is to ascertain and effectuate the intention of the legislature." Minn. Stat. § 645.16 (2018). "The first step in statutory interpretation is to determine whether the statute's language, on its face, is ambiguous. ... A statute is only ambiguous if its language is subject to more than one reasonable interpretation." In re Welfare of J.P.-S. , 880 N.W.2d 868, 871 (Minn. App. 2016) (quotation omitted). As indicated above, the Minnesota Supreme Court has previously stated that the "unexplained phrase 'in the parent's care' has a range of possible meanings." T.P. , 747 N.W.2d at 360. Accordingly, the phrase is ambiguous.
That brings us to the next step of statutory interpretation. "When a statute is ambiguous, we apply canons of statutory construction to ascertain its meaning." State v. Decker , 916 N.W.2d 385, 387 (Minn. 2018). These canons are found in Minn. Stat. § 645.08 (Minn. 2018). And they are to be followed "unless their observance would *655 involve a construction inconsistent with the manifest intent of the legislature, or repugnant to the context of the statute." Id. The first canon states that technical words and phrases are construed according to their special meaning while non-technical words "are construed according to rules of grammar and according to their common and approved usage." Minn. Stat. § 645.08(1). The parties do not assert that "care" is a technical word, and nothing in the statute suggests that it is, in fact, used in a technical sense. Generally, "care" is defined as "[w]atchful oversight; charge or supervision." The American Heritage Dictionary of the English Language 281 (5th ed. 2011).
Utilizing the canon of statutory construction requiring the use of the general definition of a non-technical word, we interpret the word "care" from the phrase "in the parent's care" to comport with this definition.[2] And we conclude that the word "parent" refers to the person who is the subject of the termination proceedings; it does not imply a special kind of care or that this person is the parent of the child who was egregiously harmed. See, e.g. , In re Child of A.S. , 698 N.W.2d 190, 197 (Minn. App. 2005) ("The statute does not require that the parent has inflicted egregious harm on his own child, but rather, that a child has experienced egregious harm in the parent's care ...." (emphasis added)), review denied (Minn. Sept. 20, 2005). This conclusion is based on the reasonable inference that a person who inflicts egregious harm on a child may later inflict egregious harm on his or her own child.
Moreover, we note that the definition of egregious harm emphasizes that the infliction of egregious harm must demonstrate "a grossly inadequate ability to provide minimally adequate parental care." Minn. Stat. § 260C.007, subd. 14 (emphasis added). This emphasis on the ability to provide parental care reinforces the idea that there does not need to be a "parent and child relationship" for egregious harm to apply, as appellant argues. Rather, it is enough that a child who suffered egregious harm was in the care (i.e., in the supervision, charge, or watchful oversight) of the person who is the subject of the termination proceeding at the time that the harm was inflicted.[3]
With this in mind, we turn to the facts of this case to determine whether M.B. was in appellant's care when he egregiously harmed her. M.B.'s mother testified that when she started having children, appellant "would come and help with [them] because I was going through a tough time." J.C. also testified that appellant *656 helped M.B.'s mother "raise her kids." And in his psychosexual assessment, appellant explained that he participated in caring for M.B. and her siblings, that he helped to raise them, and that he took on the role of a babysitter. We are satisfied that there was clear and convincing evidence that M.B. was in appellant's care when he egregiously harmed her. Moreover, we are satisfied that there was clear and convincing evidence that the egregious harm that appellant inflicted upon M.B. is "such that a reasonable person would believe it contrary to best interests of the child or of any child to be in the parent's care."See Minn. Stat. § 260C.301, subd. 1(b)(6). We conclude that the district court did not abuse its discretion in finding that the egregious-harm statutory criteria for termination of parental rights was met.[4]
II. Best Interests
Appellant challenges the district court's determination that termination of his parental rights is in the child's best interests. The termination of parental rights requires that termination be in the child's best interests. Minn. Stat. § 260C.301, subd. 7. If there is a conflict between the parent's interests and the child's interests, then "the interests of the child are paramount." J.R.B. , 805 N.W.2d at 905 (quotation omitted). A best-interests analysis involves balancing three factors: "(1) the child's interest in preserving the parent-child relationship; (2) the parent's interest in preserving the parent-child relationship; and (3) any competing interest of the child." Id. (quotation omitted). We review a best-interests determination for an abuse of discretion. Id.
Appellant makes four arguments. First, he asserts that the district court did not apply the presumption that he is fit to parent and that his continued parenting is in the child's best interests. It is true that "[t]ypically, the natural parent is presumed to be fit and suitable to be entrusted with the care of his or her child." In re Welfare of D.L.R.D. , 656 N.W.2d 247, 250 (Minn. App. 2003). The district court did not explicitly state in its order that it presumed that appellant is fit to parent the child, but it is clear from the order that the district court did not place the burden on appellant to prove that he was fit to parent. The burden remained on the county to prove, by clear and convincing evidence, that appellant is unfit and that termination is in the child's best interests.
Second, appellant argues that the evidence at trial was insufficient to overcome the presumption that he is fit to parent. But there was evidence supporting a finding that appellant's parental rights should be terminated under the egregious-harm statute, and the district court made ample findings about the child's needs and appellant's shortcomings as a father to show that termination is in the child's best interests. These findings include: (1) that appellant "was not actively engaged in the parenting of his [child] after his cohabitation with [J.C.] ended and there does not appear to be a bond, much less a strong bond, between [appellant] and his [child]"; and (2) that appellant had "not taken the appropriate steps to educate himself about his [child's] special needs." The district court also made findings elsewhere in its order that appellant roughly grabbed the *657 child's face during feeding, that J.C. had observed mysterious bruising on the child's cheek, and that the child had reported being hit by appellant.
As part of his second argument, appellant challenges the finding that he was not an engaged parent. We review factual findings for clear error and only overturn a finding if we are left with a "definite and firm conviction that a mistake has been made." In re Welfare of D.T.J. , 554 N.W.2d 104, 107 (Minn. App. 1996) (quotation omitted). There was testimony from J.C. that appellant only helped care for the child when prompted and that he would, for the most part, lie on the couch or recliner and nap when visiting his child. We are not left with the conviction that the district court made a mistake on this finding.
Third, appellant argues that the district court clearly erred when it found that he had failed to substantially comply with the terms of his probation. But there was ample testimony from both appellant and his probation officer about how, despite the fact that appellant only has one official probation violation, he has done numerous other things that could qualify as probation violations. For example, appellant could have received probation violations for not making more progress in sex-offender treatment-which was in part due to his refusal to accept responsibility for what he had done to M.B.-and for violating the terms of his home-monitoring arrangement. And the probation officer testified that appellant has not been a model client on probation. We conclude that this finding was not clearly erroneous.
And fourth, appellant argues that the district court erred as a matter of law by focusing too much on his criminal case and past conduct rather than what has happened more recently and what will happen in the future. Appellant cites to In re Welfare of the Child of J.W. for the proposition that the decision to terminate parental rights "must be based on the conditions that existed at the time of termination and it must appear that the conditions giving rise to the termination will continue for a prolonged, indeterminate period." 807 N.W.2d 441, 446 (Minn. App. 2011) (quotation omitted). But this quote is taken from a part of J.W. discussing palpable unfitness, and is therefore not relevant to our best-interests analysis. Moreover, the things that the district court considered in its best-interests analysis had occurred in the few years immediately preceding the termination proceedings, and there was no evidence that appellant had changed in the interim. Further, appellant's failure to make progress in his sex-offender treatment program and otherwise comply with his conditions of probation is yet more evidence that his behavior has not changed. Accordingly, this argument fails.
Based upon this record, we conclude that all four of appellant's best-interests arguments fail. The district court did not abuse its discretion when it determined that terminating appellant's parental rights was in the child's best interests.
DECISION
Under the egregious-harm statute, Minn. Stat. § 260C.301, subd. 1(b)(6), a child is "in the parent's care" when the child is under the supervision, charge, or watchful oversight of the person subject to the termination proceeding. There does not need to be a "parent and child relationship" between the person who inflicted the egregious harm and the child harmed in order for the egregious-harm statute to apply; the child need only have been in that person's care when harmed. Accordingly, the district court did not abuse its discretion when it based the termination of appellant's parental rights for his child on *658 its determination that M.B. was in appellant's care at the time that he egregiously harmed her. We also conclude that the district court did not abuse its discretion by determining that termination of appellant's parental rights was in the child's best interests.
Affirmed.

An Alford plea is a guilty plea where the defendant pleads guilty to a charge based on the belief the evidence would be sufficient for a jury to convict him, but maintains his actual innocence. State v. Theis , 742 N.W.2d 643, 647 (Minn. 2007) (citing North Carolina v. Alford , 400 U.S. 25, 38, 91 S.Ct. 160, 167-68, 27 L.Ed.2d 162 (1970) ).

We note that the supreme court in T.P. acknowledged a nearly identical dictionary definition of "care" but explained that the definition did "little to clarify the specific issue " before it. 747 N.W.2d at 360 n.3 (emphasis added). The specific issue in T.P. , as we discussed above, was whether "in the parent's care" should "be interpreted strictly to require that injury to the child occur in the physical presence " of the parent. Id. at 360 (emphasis added). Without deciding the full spectrum of what constituted "in the parent's care," the supreme court concluded that the phrase "should not be limited to the physical presence of a parent at the time egregious harm occurs." Id. at 361. While the dictionary definition was not helpful to resolve the specific issue in T.P. , it does help clarify the issues in this case.

Whether a child was in the care of the person subject to the termination proceedings necessarily depends on the facts of the case. As a result, the outer limits of what constitutes being "in the parent's care" cannot be neatly delineated. But we note that it is not enough that a child was merely harmed; there must some kind of relationship to the child or responsibility for the child imposed on the person because the child is in the person's care.

Appellant also challenges the district court's determination that he is palpably unfit to parent his child. But only one statutory ground for termination of parental rights is required, and we have already ruled that the egregious-harm statutory ground applies. See Minn. Stat. § 260C.301, subd. 1(b) (2018). Accordingly, it is unnecessary for us to consider this argument.